UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYSMEX CORPORATION and SYSMEX AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BECKMAN COULTER, INC., <br><br> Defendant. | Case No. 1:18-cv-740 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

1. Plaintiffs Sysmex Corporation ("Sysmex") and Sysmex America, Inc. ("SAI") (collectively "Plaintiffs") bring this Complaint for Declaratory Judgment against Beckman Coulter, Inc. ("BCI"), and allege as follows:

## NATURE OF THE COMPLAINT

2. This is a declaratory judgment action arising under the patent laws of the United States; 35 U.S.C. § 1, *et seq.* and the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202, and seeking a declaration that the making, using, selling, and/or offering for sale of certain Sysmex branded hematology analyzer systems, namely, the XN-9000 and XN-9100 products, do not infringe any valid and enforceable claim of United States Patent No. 6,581,012 entitled "Automated Laboratory Software Architecture" ("the 012 Patent"). U.S. Patent No. 6,581,012, Ex. A. This action arises out of a substantial, present, and actual controversy between Plaintiffs and BCI concerning the 012 Patent.

## THE PARTIES

3. Plaintiff Sysmex is a Japan corporation having a place of business at 1-5-1 Wakinohama-Kaigandori, Chuo-ku, Kobe 651-0073, Japan. Sysmex manufactures the XN-9000 and XN-9100 products in Kobe, Japan.

4. Plaintiff SAI is a Delaware Corporation having its principle place of business at 577 Aptakisic Road, Lincolnshire, IL 60060. SAI is a wholly-owned subsidiary of Sysmex.

5. Sysmex sells the XN-9000 and XN-9100 products to SAI, which has the exclusive right to market, distribute, and sell Sysmex branded products in the United States, including the XN-9000 and XN9100 products. Sysmex ships the XN-9000 and XN-9100 products to SAI in Illinois.

6. Defendant BCI purports to be a Delaware corporation having a principal place of business in Brea, California.

## THE PATENT-IN-SUIT

7. BCI purports to own the right, title, and interest in the 012 Patent, with full rights to pursue recovery of royalties or damages for infringement of the 012 Patent, including full rights to recover past and future damages.

## SUBJECT MATTER JURISDICTION

8. Pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, this Court has subject matter jurisdiction over this declaratory judgment action seeking a declaration of non-infringement and invalidity of the 012 Patent.

9. By letter dated October 17, 2017, BCI provided SAI notice of the 012 Patent and its potential "applicability to Sysmex's XN-9000 family of hematology analyzer products." BCI Letter, Ex. B, Oct. 17, 2017. BCI requested (1) that SAI produce certain source code purportedly covered by the GNU General Public License, and (2) that SAI provide an explanation why it "believes that its XN-9000 family does not infringe the 012 patent." *Id.*

10. By letter dated October 27, 2017, SAI acknowledged receipt of the BCI Letter, informed BCI that the BCI Letter had been forwarded to Sysmex in Kobe, Japan, and that Sysmex would contact BCI directly. SAI Letter, Ex. C, Oct. 27, 2017.

11. By letter dated October 30, 2017, Sysmex responded to the BCI Letter. Sysmex Letter, Ex. D, Oct. 30, 2017. Sysmex advised that it took BCI's letter "very seriously," and that it would carefully review the matter. *Id.* Sysmex also informed BCI that, because it was "the busiest season of the year," Sysmex would need several weeks to respond, but that it would provide its "position during the week of November 27, 2017." *Id.* However, with respect to BCI's request for source code, Sysmex said it "may be able to complete[] [its review of that request] before November 27, 2017." *Id.* Sysmex also advised that "it may [help expedite] Sysmex's review . . . if [BCI] could provide . . . information as to how the claims of your patent read on the identified product family." *Id.*

12. Four days after the Sysmex Letter, while Sysmex was investigating the matter and without any further communications from BCI, BCI filed a complaint for alleged patent infringement on November 3, 2017 in the United States District Court For The Southern District of Florida accusing both Sysmex and SAI with infringing the 012 Patent ("the Florida action"). *See* BCI Compl., Ex. E.

13. BCI's complaint in the Florida action asserts that Sysmex's XN-9000 and XN-9100 products infringe "at least claims 1, 14, 15, and 19" of the 012 Patent. *Id.*, ¶ 50.

14. In the Florida action, BCI seeks, among other things, a judgment that Sysmex's XN-9000 and XN-9100 products infringe the 012 Patent. *Id.*

15. The court in the Florida action lacks personal jurisdiction over Sysmex.

3

16. BCI's complaint in the Florida action also fails to state a claim for patent infringement against either SAI or Sysmex, and thus must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Among other deficiencies, BCI's complaint fails to allege (with well-pled facts or otherwise) that every limitation of at least one asserted claim of the 012 Patent is met by either the XN-9000 or XN-9100 products.

17. Nevertheless, as evident by BCI's filing of the Florida action, an immediate and justiciable controversy exists between Plaintiffs, on the one hand, and BCI, on the other, regarding whether Sysmex's XN-9000 and XN-9100 products have in the past and will continue to allegedly infringe "at least claims 1, 14, 15 and 19" of the 012 Patent, and whether those claims are valid and enforceable.

## JURISDICTION AND VENUE

18. This Court has general and/or specific personal jurisdiction over BCI.

19. The exercise of personal jurisdiction over BCI is consistent with the Illinois Long-Arm Statute, including but not limited to 735 §§ 5/2-209 (a)(1) and (b)(4), and Due Process. *See* 735 Ill. Comp. Stat. 5/2-209(a)(1), (b)(4) (2015).

20. The Court has personal jurisdiction over BCI because, *inter alia*, BCI is registered to do business in the State of Illinois, Ex. F, and has designated an agent in Illinois for service of process, namely, CT Corporation System, 208 S. LaSalle St, Suite 814, Chicago, IL 60604. Illinois Corporate File Report, Ex. G.

21. Further, and upon information and belief, this Court has personal jurisdiction over BCI because, *inter alia,* BCI has continuous and systematic business contact with the State of Illinois and this judicial district, including by conducting business, marketing and sales activities within Illinois and this judicial district with respect to BCI's products. BCI also provides ongoing

support and services to customers and users of BCI products located in Illinois and in this judicial district.

22. BCI has also availed itself to the jurisdiction of this Court by filing a lawsuit in this Court captioned *Beckman Coulter, Inc. v. SEKO Worldwide, LLC,* 1:12- cv-03512. A copy of that complaint in that lawsuit is attached as Exhibit H. BCI v. SEKO Worldwide Compl., Ex. H.

23. Upon information and belief, BCI also contracted for and retained the services of one or more attorneys located in this judicial district to enforce the 012 Patent against Sysmex and SAI. For example, the Florida action lists as BCI's counsel attorneys from the law firm Leydig, Voit & Mayer, Ltd., which is located at Two Prudential Plaza, Suite 4900, Chicago, IL 60601. *See* Ex. E.

24. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed enforcement of the 012 Patent against Sysmex and/or SAI. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

25. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed the substance of the BCI Letter, Ex. B, prior to BCI sending that Letter to SAI, as well as drafts of the Letter. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

26. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed the SAI Letter, Ex. C, including but not limited to how or whether to respond to that Letter. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

27. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed the Sysmex Letter, Ex. D, including but not limited to how or whether to respond to that Letter. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

28. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed whether to file the Florida action without first conducting a review of the source code for the accused XN-9000 and XN-9100 products. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

29. Upon information and belief, the BCI Vice President, who signed the above-referenced BCI Letter, Ex. B, has had meetings and discussions concerning the enforcement of the 012 Patent against Sysmex and/or SAI while physically present in this judicial district.

30. BCI has also directed its enforcement activities at a corporation located in this judicial district, namely, SAI. The BCI Letter, Ex. B, is directed to SAI, which is located in Lincolnshire, IL. Upon information and belief, the BCI Letter attached as Exhibit B was sent from within this judicial district.

31. For at least the foregoing reasons, BCI has purposefully availed itself of the privileges of conducting business in the State of Illinois; it is a corporation doing business within the State of Illinois, and it has sought the protection and benefits from the laws of the State of Illinois. Moreover, this declaratory judgment action arises from and is related to BCI's above-described enforcement activities that took place in and are directed at Illinois and this judicial district.

32. Venue is proper in this Court under 28 U.S.C. § 1391, as, *inter alia,* BCI resides in this judicial district, BCI has directed its enforcement activities against Plaintiffs with respect to the 012 Patent from within and at this judicial district, and is attempting to restrict Plaintiffs' business operations in this judicial district as they relate to the XN-9000 and XN-9100 products, which Sysmex ships into, and SAI markets, distributes and sells from, this judicial district. A substantial part of the events or omissions giving rise to this declaratory judgment action therefore occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district.

## COUNT I – DECLARATION OF NON-INFRINGEMENT

33. Plaintiffs re-allege and incorporate by reference Paragraphs 1-32 of this Declaratory Judgment Complaint.

34. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C., 35 U.S.C. § 1, *et seq.*, Plaintiffs seek a declaration that none of claims 1, 14, 15, and 19 of the 012 Patent is infringed by the manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 products.

35. BCI asserts that the manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 infringe claims 1, 14, 15, and 19 of the 012 Patent.

36. The manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 products has not, does not and will not infringe, directly and/or indirectly, any of claims 1, 14, 15, and 19 of the 012 Patent to the extent those claims are valid and enforceable for at least the following reasons.

37. Independent claim 1 (and claims 14 and 15 by virtue of their dependency from claim 1) requires "[a]n extensible clinical laboratory object-based architecture for testing a

specimen, comprising [*inter alia*] . . . ***integrated*** work flow automation layer. . . ." Ex. A, claim 1, col. 16, ll. 7-12 (emphasis added).

38. Independent claim 19 requires "[a]n extensible clinical laboratory object-based architecture for testing a specimen, comprising [*inter alia*] . . . a set of ***integrated*** work flow object classes . . . ." *Id.* at claim 19, col. 18, ll. 21-23 (emphasis added).

39. During the prosecution of the 012 Patent, the named inventors, through their attorneys, explained the meaning of the term "integrated" as used in the claims of the 012 Patent. In attempting to distinguish the claimed invention over a prior art patent to Margrey et al., the inventors stated that Margrey discloses "a robotically operated laboratory system which includes remote laboratories that perform specimen analysis using analytical instruments" that "requires multiple computer systems for operation of the robotics and laboratory analysis." The 012 Patent Prosecution History, Ex. I, p. 8, July 25, 2002. According to the inventors, Margrey discloses:

> . . . a laboratory host computer is utilized to control the analytical equipment [] while a different computer system is utilized to operate the robotics. . . . The computer system dedicated to the robotic system controls the movement of the robots, which move the specimens. Further, the laboratory host computer independently interfaces with the analytical devices and stores sample data. Additionally, a third computer is required for interfacing with the medical technologists. . . . Since Margrey et al. require ***multiple different computer systems*** to support the laboratory, move samples, store samples data and interface with the medical technologist, Margrey et al. do not teach all of the features of the independent claim 1. In particular, Margrey et al. ***do not teach an 'integrated work flow automation*** means'. For example, one computer system provides user interface for requests and a second computer system interfaces with the analytical machines and stores the data. Further, ***since the movement of the specimens is controlled by the robots and yet another computer system, the workflow is controlled by separate rather than integrated means***.

*Id.* at 8-9 (emphasis added).

40. In stark contrast, Sysmex's XN-9000 and XN-9100 products control workflow using separate rather than integrated means as the term "integrated" is used in the claims of the 012 Patent. Thus, Sysmex's XN-9000 and XN-9100 products do not and cannot have the

"integrated work flow automation layer" required by claims 1, 14 and 15, nor do they have "a set of integrated work flow object classes" as required by claim 19.

41. For at least the reasons noted above, the XN-9000 and XN-9100 products do not infringe any of claims 1, 14, 15, or 19 of the 012 patent, although Plaintiffs reserve the right to rely on additional reasons for non-infringement of those claims.

42. A present, genuine and justiciable controversy exists between Plaintiffs and BCI regarding whether the manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 products infringe claims 1, 14, 15, or 19 of the 012 Patent to the extent those claims are valid and enforceable.

43. Plaintiffs are entitled to a declaration that claims 1, 14, 15, and 19 of the 012 Patent are not infringed.

## COUNT II – DECLARATION OF INVALIDITY

44. Plaintiffs re-allege and incorporate by reference Paragraphs 1-43 of this Declaratory Judgment Complaint.

45. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C., 35 U.S.C. § 1, *et seq*., Plaintiffs seek a declaration that claims 1, 14, 15, and 19 of the 012 Patent are invalid.

46. BCI asserts that the claims 1, 14, 15, and 19 of the 012 Patent are valid and infringed by Sysmex's XN-9000 and XN-9100 products.

47. The manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 products has not infringed, does not and will not infringe the 012 Patent, because each of claims 1, 14, 15, and 19 of the 012 Patent are invalid under one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or other judicially-created bases for invalidation or unenforceability.

48. The claims of the 012 Patent are invalid under 35 U.S.C. § 112 for at least the reason that the claims are indefinite.

49. Claim 1 (and claims 14 and 15 by virtue of their dependency from claim 1) includes the following claim limitation: "at least one specimen processing module for performing at least one test on the specimen." Ex. A, claim 1, col. 16, ll. 9-11. That limitation must be construed as a "means plus function" limitation pursuant to 35 U.S.C. § 112. Because there is no structure, or algorithm, disclosed in the 012 Patent specification for performing the recited function, claims 1, 14, and 15 are invalid as indefinite under 35 U.S.C. § 112.

50. Claim 1 (and claims 14 and 15 by virtue of their dependency from claim 1) includes the following claim limitation: "an integrated user interface layer . . . . for permitting a user to control and monitor said software system." *Id.* at col. 16, ll. 23-27. Claim 19 includes the claim limitation "an integrated user interface layer . . . . for permitting a user to control and monitor said object-based architecture." *Id.* at claim 19, col. 18, ll. 26-31. These limitations must be construed as a "means plus function" limitations pursuant to 35 U.S.C. § 112. Because there is no structure, or algorithm, disclosed in the 012 Patent specification for performing the recited functions, claims 1, 14, 15, and 19 are invalid as indefinite under 35 U.S.C. § 112.

51. For at least the reasons noted above, claims 1, 14, 15, or 19 of the 012 Patent are invalid, although Plaintiffs reserve the right to rely on additional reasons for invalidity of those claims

52. A present, genuine and justiciable controversy exists between Plaintiffs and BCI regarding the validity of the claims 1, 14, 15, and 19 of the 012 Patent.

53. Plaintiffs are entitled to a declaration that claims 1, 14, 15, and 19 of the 012 Patent are invalid.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against BCI as follows:

a. declaring that Sysmex's XN-9000 and XN-9100 products have not, do not and will not infringe, either literally or under the doctrine of equivalents, directly or indirectly (either by inducement or contributorily) claims 1, 14, 15, and 19 of the 012 Patent to the extent those claims are valid and enforceable;

b. declaring claims 1, 14, 15, and 19 of the 012 Patent invalid;

c. declaring this exceptional case under 35 U.S.C. § 285 and awarding Plaintiffs' its attorneys' fees, costs, and expenses; and

d. granting Plaintiffs such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

In accordance with Fed. R. Civ. P. 38 and 39, Plaintiffs assert their rights under the Seventh Amendment to the United States Constitution and demands a trial by jury on all issues that may be so tried.

Dated:  January 31, 2018

Respectfully submitted,

By:    /s/Ralph J. Gabric
    Ralph J. Gabric,
    Erik Bokar
    BRINKS GILSON & LIONE
    455 N. Cityfront Plaza Drive
    Chicago, IL  60611
    Telephone: 312-321-4200
    Facsimile: 312-321-4299

Attorneys for Plaintiffs
SYSMEX CORPORATION and SYSMEX AMERICA, INC.