**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SYSMEX CORPORATION and SYSMEX AMERICA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:18-CV-740 |
| v. | ) ) | Judge John Z. Lee |
| BECKMAN COULTER, INC., | ) ) | |
| Defendant. | ) ) | |

## ANSWER AND COUNTERCLAIM OF DEFENDANT BECKMAN COULTER, INC.

Defendant Beckman Coulter, Inc. ("BCI"), by its undersigned attorneys, for its answer to the complaint, allege as follows:

## COMPLAINT FOR DECLARATORY JUDGMENT

1. Plaintiffs Sysmex Corporation ("Sysmex") and Sysmex America, Inc. ("SAI") (collectively "Plaintiffs") bring this Complaint for Declaratory Judgment against Beckman Coulter, Inc. ("BCI"), and allege as follows:

**Answer**: This paragraph does not require a response.

### NATURE OF THE COMPLAINT

2. This is a declaratory judgment action arising under the patent laws of the United States; 35 U.S.C. § 1, *et seq.* and the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202, and seeking a declaration that the making, using, selling, and/or offering for sale of certain Sysmex branded hematology analyzer systems, namely, the XN-9000 and XN-9100 products, do not infringe any valid and enforceable claim of United States Patent No. 6,581,012 entitled "Automated Laboratory Software Architecture" ("the 012 Patent"). U.S. Patent No. 6,581,012, Ex. A. This action arises out of a substantial, present, and actual controversy between Plaintiffs and BCI concerning the 012 Patent.

**Answer**: BCI admits that this action purports to arise under the patent laws of the United States, 35 U.S.C. § 1 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and involves the '012 patent; and that Exhibit A appears to be a true and accurate copy of the '012

patent. Except as expressly admitted, BCI denies each and every allegation of paragraph 2 of the complaint.

## THE PARTIES

3. Plaintiff Sysmex is a Japan corporation having a place of business at 1-5-1 Wakinohama-Kaigandori, Chuo-ku, Kobe 651-0073, Japan. Sysmex manufactures the XN-9000 and XN-9100 products in Kobe, Japan.

   **Answer**: BCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the complaint, and therefore denies same.

4. Plaintiff SAI is a Delaware Corporation having its principle [sic] place of business at 577 Aptakisic Road, Lincolnshire, IL 60060. SAI is a wholly-owned subsidiary of Sysmex.

   **Answer**: BCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the complaint, and therefore denies same.

5. Sysmex sells the XN-9000 and XN-9100 products to SAI, which has the exclusive right to market, distribute, and sell Sysmex branded products in the United States, including the XN-9000 and XN9100 products. Sysmex ships the XN-9000 and XN-9100 products to SAI in Illinois.

   **Answer**: Upon information and belief, BCI admits that Sysmex sells the XN-9000 and XN-9100 products into the United States.  BCI is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph of the complaint, and therefore denies same.

6. Defendant BCI purports to be a Delaware corporation having a principal place of business in Brea, California.

   **Answer**: Admitted.

## THE PATENT-IN-SUIT

7. BCI purports to own the right, title, and interest in the 012 Patent, with full rights to pursue recovery of royalties or damages for infringement of the 012 Patent, including full rights to recover past and future damages.

   **Answer**: Admitted.

## SUBJECT MATTER JURISDICTION

8. Pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, this Court has subject matter jurisdiction over this declaratory judgment action seeking a declaration of non-infringement and invalidity of the 012 Patent.

**Answer**: The allegations of this paragraph state legal conclusions to which a response is not required. To the extent that a response is required, BCI admits a United States district court has subject matter jurisdiction over BCI's claims of infringement of the 012 patent due to on a prior complaint that BCI filed against Sysmex and SAI in the U.S. District Court for the Southern District of Florida, Civil Action No. 17-CV-24049-DPG.

9. By letter dated October 17, 2017, BCI provided SAI notice of the 012 Patent and its potential "applicability to Sysmex's XN-9000 family of hematology analyzer products." BCI Letter, Ex. B, Oct. 17, 2017. BCI requested (1) that SAI produce certain source code purportedly covered by the GNU General Public License, and (2) that SAI provide an explanation why it "believes that its XN-9000 family does not infringe the 012 patent." *Id.*

**Answer**: Admitted.

10. By letter dated October 27, 2017, SAI acknowledged receipt of the BCI Letter, informed BCI that the BCI Letter had been forwarded to Sysmex in Kobe, Japan, and that Sysmex would contact BCI directly. SAI Letter, Ex. C, Oct. 27, 2017.

**Answer**: BCI admits that it received the letter attached to the Complaint in this Action as Ex. C. BCI further admits that SAI acknowledged and accepted receipt of the BCI Letter and that SAI forwarded the BCI Letter to Sysmex in Kobe, Japan for a response to BCI. BCI otherwise denies the remaining allegations in this paragraph.

11. By letter dated October 30, 2017, Sysmex responded to the BCI Letter. Sysmex Letter, Ex. D, Oct. 30, 2017. Sysmex advised that it took BCI's letter "very seriously," and that it would carefully review the matter. *Id.* Sysmex also informed BCI that, because it was "the busiest season of the year," Sysmex would need several weeks to respond, but that it would provide its "position during the week of November 27, 2017." *Id.* However, with respect to BCI's request for source code, Sysmex said it "may be able to complete[] [its review of that request] before November 27, 2017." *Id.* Sysmex also advised that "it may [help expedite] Sysmex's review . . . if [BCI] could provide . . . information as to how the claims of your patent read on the identified product family." *Id.*

**Answer**: BCI admits that it received the letter attached to the Complaint in this action as Ex. D. BCI further admits that Sysmex responded to BCI's Letter on behalf of itself and SAI. BCI admits that the letter includes the language quoted in the paragraph, and BCI otherwise denies the remaining allegations in this paragraph.

12. Four days after the Sysmex Letter, while Sysmex was investigating the matter and without any further communications from BCI, BCI filed a complaint for alleged patent infringement on November 3, 2017 in the United States District Court For The Southern District of Florida accusing both Sysmex and SAI with infringing the 012 Patent ("the Florida action"). *See* BCI Compl., Ex. E.

**Answer**: BCI admits that it filed the Complaint attached as Ex. E in the United States District Court for the Southern District of Florida on November 3, 2017. BCI is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph of the complaint, and therefore denies same.

13. BCI's complaint in the Florida action asserts that Sysmex's XN-9000 and XN-9100 products infringe "at least claims 1, 14, 15, and 19" of the 012 Patent. *Id.*, ¶ 50.

**Answer**: Admitted.

14. In the Florida action, BCI seeks, among other things, a judgment that Sysmex's XN-9000 and XN-9100 products infringe the 012 Patent. *Id.*

**Answer**: Admitted.

15. The court in the Florida action lacks personal jurisdiction over Sysmex.

**Answer**: Denied.

16. BCI's complaint in the Florida action also fails to state a claim for patent infringement against either SAI or Sysmex, and thus must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Among other deficiencies, BCI's complaint fails to allege (with well-pled facts or otherwise) that every limitation of at least one asserted claim of the 012 Patent is met by either the XN-9000 or XN-9100 products.

**Answer**: Denied.

17. Nevertheless, as evident [sic] by BCI's filing of the Florida action, an immediate and justiciable controversy exists between Plaintiffs, on the one hand, and BCI, on the other,

regarding whether Sysmex's XN-9000 and XN-9100 products have in the past and will continue to allegedly infringe "at least claims 1, 14, 15 and 19" of the 012 Patent, and whether those claims are valid and enforceable.

**Answer**: Admitted.


## JURISDICTION AND VENUE

18. This Court has general and/or specific personal jurisdiction over BCI.

**Answer**: The allegations of this paragraph state legal conclusions to which a response is not required, and to the extent a response is required, BCI denies them.


19. The exercise of personal jurisdiction over BCI is consistent with the Illinois Long-Arm Statute, including but not limited to 735 §§ 5/2-209 (a)(1) and (b)(4), and Due Process. *See* 735 Ill. Comp. Stat. 5/2-209(a)(1), (b)(4) (2015).

**Answer**: The allegations of this paragraph state legal conclusions to which a response is not required, and to the extent a response is required, BCI denies them.


20. The Court has personal jurisdiction over BCI because, *inter alia*, BCI is registered to do business in the State of Illinois, Ex. F, and has designated an agent in Illinois for service of process, namely, CT Corporation System, 208 S. LaSalle St, Suite 814, Chicago, IL 60604. Illinois Corporate File Report, Ex. G.

**Answer**: BCI admits that it is registered to do business in the State of Illinois and that it has designated an agent in Illinois for service of process. The remainder of the allegations in this paragraph state legal conclusions to which a response is not required, and to the extent a response is required, BCI denies them.


21. Further, and upon information and belief, this Court has personal jurisdiction over BCI because, *inter alia,* BCI has continuous and systematic business contact with the State of Illinois and this judicial district, including by conducting business, marketing and sales activities within Illinois and this judicial district with respect to BCI's products. BCI also provides ongoing support and services to customers and users of BCI products located in Illinois and in this judicial district.

**Answer**: The allegations of this paragraph state legal conclusions to which a response is not required, and to the extent a response is required, BCI denies them.

22. BCI has also availed itself to the jurisdiction of this Court by filing a lawsuit in this Court captioned *Beckman Coulter, Inc. v. SEKO Worldwide, LLC,* 1:12- cv-03512. A copy of that complaint in that lawsuit is attached as Exhibit H. BCI v. SEKO Worldwide Compl., Ex. H.

    **Answer**: BCI admits that it filed a lawsuit in this Court captioned *Beckman Coulter, Inc. v. SEKO Worldwide, LLC,* 1:12- cv-03512, and that a copy of the complaint is attached as Ex. H. The remaining allegations of this paragraph state legal conclusions to which a response is not required and to the extent a response is required, BCI denies them.

23. Upon information and belief, BCI also contracted for and retained the services of one or more attorneys located in this judicial district to enforce the 012 Patent against Sysmex and SAI. For example, the Florida action lists as BCI's counsel attorneys from the law firm Leydig, Voit & Mayer, Ltd., which is located at Two Prudential Plaza, Suite 4900, Chicago, IL 60601. *See* Ex. E.

    **Answer**:Admitted.

24. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed enforcement of the 012 Patent against Sysmex and/or SAI. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

    **Answer**: BCI's response to the allegations of this paragraph is protected by the attorney-client privilege, and, on this basis, BCI denies the allegations of this paragraph.

25. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed the substance of the BCI Letter, Ex. B, prior to BCI sending that Letter to SAI, as well as drafts of the Letter. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

    **Answer**: BCI's response to the allegations of this paragraph is protected by the attorney-client privilege, and, on this basis, BCI denies the allegations of this paragraph.

26. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed the SAI Letter, Ex. C, including but not limited to how or whether to respond to that Letter. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

**Answer**: BCI's response to the allegations of this paragraph is protected by the attorney-client privilege, and, on this basis, BCI denies the allegations of this paragraph.

27. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed the Sysmex Letter, Ex. D, including but not limited to how or whether to respond to that Letter. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

**Answer**: BCI's response to the allegations of this paragraph is protected by the attorney-client privilege, and, on this basis, BCI denies the allegations of this paragraph.

28. Upon information and belief, BCI personnel and attorneys at Leydig, Voit & Mayer in Chicago met and/or discussed whether to file the Florida action without first conducting a review of the source code for the accused XN-9000 and XN-9100 products. Upon information and belief, one or more of the participants were present in this judicial district during those meetings and/or discussions.

**Answer**: BCI's response to the allegations of this paragraph is protected by the attorney-client privilege, and, on this basis, BCI denies the allegations of this paragraph.

29. Upon information and belief, the BCI Vice President, who signed the above- referenced BCI Letter, Ex. B, has had meetings and discussions concerning the enforcement of the 012 Patent against Sysmex and/or SAI while physically present in this judicial district.

**Answer**: BCI's response to the allegations of this paragraph is protected by the attorney-client privilege, and, on this basis, BCI denies the allegations of this paragraph.

30. BCI has also directed its enforcement activities at a corporation located in this judicial district, namely, SAI. The BCI Letter, Ex. B, is directed to SAI, which is located in Lincolnshire, IL. Upon information and belief, the BCI Letter attached as Exhibit B was sent from within this judicial district.

**Answer**: BCI admits that it addressed the BCI Letter to SAI, which subsequently accepted the letter on behalf of Sysmex, which then responded from Japan.  BCI disputes the characterization of the remaining allegations in this paragraph of the complaint or is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph of the complaint, and therefore denies same.

31. For at least the foregoing reasons, BCI has purposefully availed itself of the privileges of conducting business in the State of Illinois; it is a corporation doing business within the State of Illinois, and it has sought the protection and benefits from the laws of the State of Illinois. Moreover, this declaratory judgment action arises from and is related to BCI's above- described enforcement activities that took place in and are directed at Illinois and this judicial district.

**Answer**: BCI is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the complaint, and therefore denies same.

32. Venue is proper in this Court under 28 U.S.C. § 1391, as, *inter alia,* BCI resides in this judicial district, BCI has directed its enforcement activities against Plaintiffs with respect to the 012 Patent from within and at this judicial district, and is attempting to restrict Plaintiffs' business operations in this judicial district as they relate to the XN-9000 and XN-9100 products, which Sysmex ships into, and SAI markets, distributes and sells from, this judicial district. A substantial part of the events or omissions giving rise to this declaratory judgment action therefore occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district.

**Answer**: The allegations of this paragraph state legal conclusions to which a response is not required. To the extent a response is required, BCI denies that this judicial district is an appropriate venue and BCI incorporates its prior responses. BCI is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph of the complaint, and therefore denies same.

## COUNT I – DECLARATION OF NON-INFRINGEMENT

33. Plaintiffs re-allege and incorporate by reference Paragraphs 1-32 of this Declaratory Judgment Complaint.

**Answer**: BCI incorporates by reference its responses to Paragraphs 1-32 of the Complaint.

34. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C., 35 U.S.C. § 1, *et seq*., Plaintiffs seek a declaration that none of claims 1, 14, 15, and 19 of the 012 Patent is infringed by the manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 products.

**Answer**: BCI admits that Plaintiffs purport to seek a declaration that none of claims 1, 14, 15, and 19 of the 012 Patent is infringed by the manufacture, use, offer for sale, or sale of

Sysmex's XN-9000 and XN-9100 products. The remaining allegations of this paragraph state legal conclusions to which a response is not required.

35. BCI asserts that the manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 infringe claims 1, 14, 15, and 19 of the 012 Patent.

**Answer**: Admitted that BCI has alleged in the Florida Action that the manufacture, use, importation, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 infringes claims 1, 14, 15, and 19 of the 012 Patent.

36. The manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 products has not, does not and will not infringe, directly and/or indirectly, any of claims 1, 14, 15, and 19 of the 012 Patent to the extent those claims are valid and enforceable for at least the following reasons.

**Answer**: Denied.

37. Independent claim 1 (and claims 14 and 15 by virtue of their dependency from claim 1) requires "[a]n extensible clinical laboratory object-based architecture for testing a specimen, comprising [*inter alia*] . . . *integrated* work flow automation layer. . . ." Ex. A, claim 1, col. 16, ll. 7-12 (emphasis added).

**Answer**: Denied, including on the basis that this is not an accurate statement of claim 1.

38. Independent claim 19 requires "[a]n extensible clinical laboratory object-based architecture for testing a specimen, comprising [*inter alia*] . . . a set of *integrated* work flow object classes . . . ." *Id.* at claim 19, col. 18, ll. 21-23 (emphasis added).

**Answer**: Denied including on the basis that this is not an accurate statement of claim 19.

39. During the prosecution of the 012 Patent, the named inventors, through their attorneys, explained the meaning of the term "integrated" as used in the claims of the 012 Patent. In attempting to distinguish the claimed invention over a prior art patent to Margrey et al., the inventors stated that Margrey discloses "a robotically operated laboratory system which includes remote laboratories that perform specimen analysis using analytical instruments" that "requires multiple computer systems for operation of the robotics and laboratory analysis." The 012 Patent Prosecution History, Ex. I, p. 8, July 25, 2002. According to the inventors, Margrey discloses:

. . . a laboratory host computer is utilized to control the analytical equipment [] while a different computer system is utilized to operate the robotics. . . . The computer system dedicated to

the robotic system controls the movement of the robots, which move the specimens. Further, the laboratory host computer independently interfaces with the analytical devices and stores sample data. Additionally, a third computer is required for interfacing with the medical technologists. . . . Since Margrey et al. require *multiple different computer systems* to support the laboratory, move samples, store samples data and interface with the medical technologist, Margrey et al. do not teach all of the features of the independent claim 1. In particular, Margrey et al. *do not teach an 'integrated work flow automation means'*. For example, one computer system provides user interface for requests and a second computer system interfaces with the analytical machines and stores the data. Further, *since the movement of the specimens is controlled by the robots and yet another computer system, the workflow is controlled by separate rather than integrated means*.

*Id.* at 8-9 (emphasis added).

**Answer**: Denied, including on the basis that this is not an accurate statement of the prosecution history of the 012 Patent.

40. In stark contrast, Sysmex's XN-9000 and XN-9100 products control workflow using separate rather than integrated means as the term "integrated" is used in the claims of the 012 Patent. Thus, Sysmex's XN-9000 and XN-9100 products do not and cannot have the "integrated work flow automation layer" required by claims 1, 14 and 15, nor do they have "a set of integrated work flow object classes" as required by claim 19.

**Answer**: Denied.

41. For at least the reasons noted above, the XN-9000 and XN-9100 products do not infringe any of claims 1, 14, 15, or 19 of the 012 patent, although Plaintiffs reserve the right to rely on additional reasons for non-infringement of those claims.

**Answer**: Denied.

42. A present, genuine and justiciable controversy exists between Plaintiffs and BCI regarding whether the manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 products infringe claims 1, 14, 15, or 19 of the 012 Patent to the extent those claims are valid and enforceable.

**Answer**: Admitted that a justiciable controversy exists between Plaintiffs and BCI in the Florida Action that the manufacture, use, importation, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 infringes claims 1, 14, 15, and 19 of the 012 Patent. The remaining allegations of this paragraph contain legal conclusions to which no response is required.

43. Plaintiffs are entitled to a declaration that claims 1, 14, 15, and 19 of the 012 Patent are not infringed.

**Answer**: Denied.


## COUNT II – DECLARATION OF INVALIDITY

44. Plaintiffs re-allege and incorporate by reference Paragraphs 1-43 of this Declaratory Judgment Complaint.

**Answer**: Admitted.


45. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C., 35 U.S.C. § 1, *et seq*., Plaintiffs seek a declaration that claims 1, 14, 15, and 19 of the 012 Patent are invalid.

**Answer**:BCI admits that Plaintiffs purport to seek a declaration that seek a declaration that claims 1, 14, 15, and 19 of the 012 Patent are invalid. The remaining allegations of this paragraph state legal conclusions to which a response is not required.


46. BCI asserts that the claims 1, 14, 15, and 19 of the 012 Patent are valid and infringed by Sysmex's XN-9000 and XN-9100 products.

**Answer**: Admitted that BCI has alleged in the Florida Action that the manufacture, use, importation, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 infringes claims 1, 14, 15, and 19 of the 012 Patent.


47. The manufacture, use, offer for sale, or sale of Sysmex's XN-9000 and XN-9100 products has not infringed, does not and will not infringe the 012 Patent, because each of claims 1, 14, 15, and 19 of the 012 Patent are invalid under one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or other judicially-created bases for invalidation or unenforceability.

**Answer**: Denied.


48. The claims of the 012 Patent are invalid under 35 U.S.C. § 112 for at least the reason that the claims are indefinite.

**Answer**: Denied.

49. Claim 1 (and claims 14 and 15 by virtue of their dependency from claim 1) includes the following claim limitation: "at least one specimen processing module for performing at least one test on the specimen." Ex. A, claim 1, col. 16, ll. 9-11. That limitation must be construed as a "means plus function" limitation pursuant to 35 U.S.C. § 112. Because there is no structure, or algorithm, disclosed in the 012 Patent specification for performing the recited function, claims 1, 14, and 15 are invalid as indefinite under 35 U.S.C. § 112.

   **Answer**: Denied.

50. Claim 1 (and claims 14 and 15 by virtue of their dependency from claim 1) includes the following claim limitation: "an integrated user interface layer . . . . for permitting a user to control and monitor said software system." *Id.* at col. 16, ll. 23-27. Claim 19 includes the claim limitation "an integrated user interface layer . . . . for permitting a user to control and monitor said object-based architecture." *Id.* at claim 19, col. 18, ll. 26-31. These limitations must be construed as a "means plus function" limitations pursuant to 35 U.S.C. § 112. Because there is no structure, or algorithm, disclosed in the 012 Patent specification for performing the recited functions, claims 1, 14, 15, and 19 are invalid as indefinite under 35 U.S.C. § 112.

   **Answer**: Denied.

51. For at least the reasons noted above, claims 1, 14, 15, or 19 of the 012 Patent are invalid, although Plaintiffs reserve the right to rely on additional reasons for invalidity of those claims

   **Answer**: Denied.

52. A present, genuine and justiciable controversy exists between Plaintiffs and BCI regarding the validity of the claims 1, 14, 15, and 19 of the 012 Patent.

   **Answer**: Denied.

53. Plaintiffs are entitled to a declaration that claims 1, 14, 15, and 19 of the 012 Patent are invalid.

   **Answer**: Denied.

## AFFIRMATIVE AND OTHER DEFENSES

54. This Court lacks personal jurisdiction over BCI for this action.

55. Plaintiffs' chosen venue for this action is improper.

56. Plaintiffs fail to state a claim upon which relief can be granted.

57. BCI reserves the right to assert all affirmative and other defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, that may now or in the future be available based on discovery, any other factual investigation, or any other development relating to this case or any other action.

## COUNTERCLAIM

Beckman Coulter, Inc. ("BCI") files the following counterclaim against Plaintiffs Sysmex Corporation and Sysmex America, Inc. ("Plaintiffs").

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Plaintiffs' infringement of United States Patent No. 6,581,012, entitled "Automated Laboratory Software Architecture" (the "'012 Patent"). BCI is the owner by assignment of the '012 Patent. The '012 Patent describes and claims an integrated clinical laboratory system with integrated work flow automation programming for testing specimens. BCI has owned the '012 Patent throughout Plaintiffs' infringing acts and still owns it.

## PARTIES

2. BCI is a Delaware corporation having its principal place of business in Brea, California.

3. BCI is an industry leader in diagnostics and equipment for biomedical research and testing. BCI's technologies improve the productivity of medical professionals and scientists, supplying critical information for improving patient health and delivering trusted solutions for research and discovery. BCI's technologies are used in thousands of hospitals and laboratory facilities worldwide.

4. BCI has research facilities located in Miami, Florida, where over 1,100 people are employed.

5. The subject matter of the '012 patent was invented by inventors residing in Florida at the time.

6. BCI does not maintain facilities in this district.

7. Sysmex America, Inc. is a Delaware corporation having its principal place of business at 577 Aptakisic Road, Lincolnshire, Illinois 60069.

8. Sysmex Corporation is a Japan corporation having its principal place of business at 1-5-1 Wakinohama-Kaigandori, Chuo-ku, Kobe 651-0073, Japan.

9. On information and belief, Sysmex America, Inc. is, at least, an agent of Sysmex Corporation in connection with certain of the activity described below.

10. Sysmex states on its website that "Sysmex America, Inc. in Lincolnshire, Illinois, is the US headquarters for Sysmex Corporation based in Kobe, Japan."

11. As explained herein, Plaintiffs' infringement has harmed BCI. Without authorization, Plaintiffs have made, sold, offered to sell, used and/or imported products and services that infringe the '012 Patent.

## JURISDICTION AND VENUE

12. This action is for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has jurisdiction over the patent infringement cause of action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13. The Court has personal jurisdiction over Plaintiffs because they have consented to such jurisdiction by filing a declaratory judgment action in this district alleging that they do not infringe the '012 patent and that one or more claims of the '012 patent are invalid under 35 U.S.C.

§§ 102 or 103.

14.     To the extent the Court determines venue is proper for Plaintiffs' declaratory judgment claims, venue is proper in this Court for BCI's counterclaim under 28 U.S.C. §§ 1391 and 1400.

15.     Plaintiffs have committed acts of patent infringement in this district.

16.     Sysmex America, Inc. has maintained a regular and established place of business in this district, with a physical office at 577 Aptakisic Road, Lincolnshire, Illinois.

17.     On information and belief, Sysmex Corporation does not maintain any regular and established place of business in the United States. Venue is therefore proper as to Sysmex Corporation in any district in the United States.

### THE '012 PATENT

18.     The '012 Patent issued on June 17, 2003.

19.     BCI owns the right, title, and interest in the '012 Patent, with full rights to pursue recovery of royalties or damages for infringement of the '012 Patent, including full rights to recover past and future damages.

20.     Each claim of the '012 Patent is valid and enforceable.

21.     The '012 Patent describes a technical solution to a technical problem. For example, specimen analysis and processing systems prior to the '012 Patent performed only some but not all technical aspects of a laboratory work flow. Pre-analytical tasks such as order entry, specimen collection and labeling, specimen receipt, specimen sorting, aliquoting, specimen delivery, work load balancing, and ordering reflex testing were performed separately from analytical tasks such as quality control analysis, analyzer checks, specimen identification, sample analysis, sample preparation, and test repeats. Such analytical tasks were, in turn, performed separately from post-

analytical tasks such as test data review, result verification, quality assurance analysis, insurance claims, results data storage, specimen storage, and specimen retrieval.

22.    Due to prior technical limitations, no single system existed that seamlessly performed the diverse aspects of the laboratory testing process. The invention of the '012 Patent solved this problem through the use of an extensible object-based architecture.

23.    The programming objects and methods of the '012 Patent invention permit integration between the pre-analytical, analytical and post-analytical aspects of a laboratory facility, and further permit automation and increased scalability, which had not been possible due to the technical limitations of prior systems.

24.    As explained in greater detail below, Sysmex provide products and services that use the technology claimed by '012 Patent, and have offered infringing products for sale nationwide and in this judicial district, including at least the XN-9000 series of hematology analyzer products.

**FACTUAL BACKGROUND**

25.    Plaintiffs offers products and services that are similar to BCI's products and services.

26.    Plaintiffs and BCI both offer medical laboratory diagnostic and analysis equipment, such as hematology analyzer systems.

27.    Plaintiffs and BCI directly compete for customers and potential customers of medical laboratory diagnostic and analysis equipment, including hematology analyzer systems.

28.    Plaintiffs manufacture and/or sell a plurality of devices for automated execution of blood analyses. These hematology analysis units are sold by Sysmex under the product series name "XN Series." The XN Series includes the products XN-1000, XN-2000, XN-3000, and XN-9000,

which differ from one another with regard to technical equipment and configuration and the number of specimens that can be analyzed per unit of time.

29.     The XN-1000 is the basic model of the XN Series and in the basic configuration has an XN analysis module of the type XN-10 and a sampler module or sample transportation module of the type SA-10, which can accommodate up to five racks with blood samples. The XN-1000 is capable of analyzing about 100 blood samples per hour.

30.     By comparison with the XN-1000, the XN-2000 offers twice the range of functions and is equipped with two XN analysis modules and an SA-20 type sampler module for up to ten racks. The XN-2000 is capable of achieving a throughput of 200 blood samples per hour.

31.     In addition to the equipment of the XN-2000, the XN-3000 has a SP-10 type slide preparation unit, which provides automated production of blood smears in the context of sample preparation. Blood smears produced by the slide preparation unit can then be automatically analyzed by one of the XN analysis modules.

32.     The XN-9000 is the most comprehensive product of the XN Series and is designed for a high throughput of blood samples. The basic model of the XN-9000 has at least the same equipment as the XN-3000, but is expandable and can be adapted in modular fashion to the specific needs of hospitals and laboratories.

33.     Plaintiffs advertise that the XN-9000 offers a "Flexible modular design for scalability and future expandability" and uses a "Lavender Top Management with Sysmex WAM Middleware" such that "Results and specimen management are easily scaled to support a wide range of laboratory environments."

34.     Plaintiffs describe the operation of the XN-9000 as follows:

*"The XN-9000 takes a whole new approach to hematology automation and offers a suite of higher capacity solutions that are both scalable and configurable. If you*

*need to integrate workstations to improve turnaround time and labor utilization, the XN-9000 can be tailored to meet your requirements. Up to 9 analytical modules may be combined in one integrated system. This configuration can also include other automation modules such as the Sysmex SP-10 slidemaker/stainer, automated reagent preparation units (Sysmex RU-20), tube sorters, and hemoglobin A1c testing modules.*

35. Plaintiffs further describes the XN-9000 as offering: *"Flexible modular design for scalability and future expandability."*

36. A sample configuration of an XN-9000 system, as advertised by Plaintiffs, is attached as **Exhibit "A."**  The configuration includes a slidemaker/stainer (SP-10), two specimen analysis modules (XN-10), a specimen transport module, and an information processing unit.

37. The XN-9000 is a system for use in all three phases of the analysis cycle for specimen material: pre-analytical, analytical and post-analytical processing.  Plaintiffs advertise the XN-9000 as an "Option for laboratories desiring hands-free pre- and post-analytical Lavender Top Management® (LTM) solution."

38. The XN-9000 system includes an extensible clinical laboratory object-based architecture for testing a specimen. The architecture is configured for providing laboratory information flow management for pre-analytical, analytical and post-analytical laboratory processing.

39. The XN-9000 architecture includes a physical element layer that includes at least one specimen processing module for performing at least one test on a specimen.

40. The XN-9000 architecture includes an integrated work flow automation layer for communicating with a specimen processing module. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the work flow automation layer of the XN-9000 architecture includes a set of integrated work flow object classes for performing specimen tests, and which include programming objects which can be specialized.

18

41.     The XN-9000, through its object-based architecture, processes user requests for specimen tests. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture includes means for processing such requests using structure that is the same as or equivalent to what is described in the '012 Patent specification.

42.     The XN-9000, through its object-based architecture, provides functional control of a specimen processing module. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture further includes means for providing such control using structure that is the same as or equivalent to what is described in the '012 Patent specification.

43.     The XN-9000, through its object-based architecture, processes test result data from specimen tests. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture includes means for processing such test result data using structure that is the same as or equivalent to what is described in the '012 Patent specification.

44.     On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture includes published interfaces through which the architecture may be extended.

45.     The XN-9000 architecture includes an integrated user interface layer for communicating with the workflow automation layer to permit a user to control and monitor the system.

46.      The XN-9000 architecture further includes at least one specimen delivery module for transporting specimens to and from at least one specimen processing module.

47. The XN-9000, through its object-based architecture, controls specimen position, routing and distribution to processing sites. On information and belief, and as will be confirmed through an inspection of the XN-9000 source code, the workflow automation layer of the XN-9000 architecture further includes means for controlling specimen position, routing and distribution to processing sites using structure that is the same as or equivalent to what is described in the '012 Patent specification.

48. BCI requested access to the source code for the XN-9000. As of the filing of this Counterclaim, Plaintiffs have not made the complete source code available and have not indicated that they will make the source code available.

49. On October 5, 2017, Plaintiffs introduced a new product in the United States which it denoted as the XN-9100. According to Plaintiffs, the XN-9100 "provides the same reliable and proficient connectivity options as the XN-9000, but with greater customization that saves space and maximizes productivity." On information and belief, the operation of the XN-9000 system described in paragraphs 32–47 above applies equally to the XN-9100 system.

50. All conditions precedent to the filing of this action have occurred, have been performed or have been waived.


## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,581,012

51. BCI refers to and incorporates herein the allegations of Paragraphs 1-50 above.

52. Plaintiffs have offered infringing products for sale nationwide and in this judicial district, including at least the XN-9000 and XN-9100 Automated Hematology System.

53. Plaintiffs have infringed and are still infringing at least claims 1, 14, 15 and 19 of the '012 Patent by making, selling, and using hematology analyzer systems that embody the

patented invention, including at least the XN-9000 and XN-9100 Automated Hematology System, and Sysmex will continue to do so unless enjoined by this Court.

54.     Plaintiffs' infringement of the '012 Patent has occurred with knowledge of the '012 Patent and willfully, intentionally and deliberately in violation of 35 U.S.C. § 284. Despite their knowledge of the '012 Patent, Plaintiffs have not taken steps to avoid infringement.

55.     BCI has been injured by Plaintiffs' ongoing, willful infringement of the '012 Patent and is entitled to recover damages adequate to compensate BCI for infringement of the '012 Patent.

56.     BCI has provided notice of the '012 Patent to Plaintiffs in compliance with the statutory requirement of 35 U.S.C. § 287.

**WHEREFORE**, Defendant, BECKMAN COULTER, INC., prays that the Court enter judgment against Plaintiffs, SYSMEX AMERICA, INC. and SYSMEX CORPORATION as follows: (1) Entry of judgment holding Plaintiffs liable for infringement of the '012 Patent; (2) An Order enjoining Plaintiffs and its officers, agents, servants, employees, and attorneys, and those in active concert or participation with them who receive actual notice of the order granting the injunction by personal service or otherwise, from continued acts of infringement of the '012 Patent; (3) An award to BCI of damages against Plaintiffs for the infringement of the '012 Patent, together with prejudgment and post-judgment interest; (4) Trebling of damages under 35 U.S.C. § 284 in view of the willful and deliberate nature of Plaintiffs' infringement of the '012 Patent; (5) An award to BCI of its costs and attorney's fees under 35 U.S.C. § 285; and (6) Such other and further relief to BCI, at law or in equity, which the Court may deem proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), BCI demands a trial by jury for all issues so triable.

Dated: March 2, 2018

Respectfully submitted,

/s/Aaron R. Feigelson

Wesley O. Mueller (6199650)
David M. Airan (6215687)
Aaron R. Feigelson (6279091)
Nicole E. Kopinski (6286626)
**LEYDIG, VOIT & MAYER, LTD.**
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601
Telephone: (312) 616-5600
Facsimile: (312) 616-5700

*Attorneys for Defendant*
*Beckman Coulter, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on the 2nd day of March, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for Plaintiffs Sysmex Corp.. et al.*

> Ralph J. Gabric
> Erik Bokar
> **BRINKS GILSON & LIONE**
> 455 N. Cityfront Plaza Drive
> Chicago, Illinois 60611
> Tel.: (312) 321-4200

> */s/Aaron R. Feigelson*